## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## COLUMBUS DIVISION

CHAD CONLEY                          *

**PLAINTIFF**                        *          **CIVIL ACTION FILE NO:** 4:16-CV-145

v.                          *

CITY OF LUMPKIN, GA[1] and           *
CHARLES GIBSON, individually,
and in his former official capacity as   *      Jury Trial Demanded
Mayor of the City of Lumpkin, GA,
                                     *

**DEFENDANTS**

## COMPLAINT

### NATURE OF COMPLAINT

Plaintiff was a white police officer employed by the City of Lumpkin, GA whose career became the casualty of actions by then Mayor Charles Gibson, calculated to rid the department of white police officers and place less qualified African-Americans in positions of "power" within the department. Specifically, Plaintiff was demoted and not promoted favoring a less qualified African-American and Plaintiff's efforts in opposition to discriminatory practices created an environment leading to his constructive discharge.

---

[1] Plaintiff anticipates the addition of more Defendants as discovery reveals the identities of malefactors.

## PARTIES

### 1.

Plaintiff Chad Conley is a Caucasian citizen of the United States and a resident of the State of Georgia.

### 2.

Defendant City of Lumpkin (City) is a duly organized and existing municipality under the laws of the State of Georgia with the capacity to sue and be sued, and which acted through its agents, a Mayor and City Council, at all times relevant herein.

### 3.

Defendant City of Lumpkin may be served through its present Mayor, Jimmy Babb, at 544 Martin Luther King, Jr. Drive, Lumpkin, Georgia  31815.

### 4.

Defendant Charles Gibson. African-American, is a is a resident of Stewart County, Middle District, Georgia and was the elected Mayor of the City of Lumpkin and chief decision maker at all time relevant herein.  He may be served at his residence at 120 Alabama Circle, Lumpkin, Georgia 31815.

## JURISDICTION AND VENUE

### 5.

Plaintiff brings this action pursuant to the Equal Protection Clause of the United States Constitution and 42 U.S.C. § 1981 (the Civil Rights Act of 1866, as amended in 1991), 42 U.S.C. § 1983, 42 U.S.C.S. § 1988, 42 U.S.C.S. § 2000e-2 (Title VII) and various state contract claims Plaintiff also bring this action pursuant to the First Amendment to the United States Constitution.  Jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 1983, 28 U.S.C. §1331 (federal question) and 28 U.S.C. § 1343 (civil rights) and 42 U.S.C. §§ 2000e, *et seq*., (Title VII of the Civil Rights Act of 1964, as amended).

### 6.

The unlawful violations of Plaintiff's civil rights were committed within the Middle District of Georgia. Venue is proper in this Court under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3), as every act of which Plaintiff complains occurred in the Columbus Division of the United States District Court for the Middle District of Georgia.

### 7.

Defendants City of Lumpkin's and Gibson's conduct was done under color of state and local law.  All of Defendants' discriminatory and retaliatory conduct described herein were accomplished pursuant to official policy and custom of City

of Lumpkin and the then Mayor of Lumpkin (Gibson) or were committed or authorized by officials whose acts can be fairly deemed to be the actions and official policy and customs of Defendants City of Lumpkin and then Mayor of Lumpkin (Gibson).

8.

Defendant Gibson's conduct violated clearly established statutory or constitutional rights of which any reasonable person would have known.

9.

The acts at issue were taken with intent to discriminate by policymakers, in accordance with customs, policies and practices promulgated by Gibson, and/or the governing body of the City of Lumpkin.

## ADMINISTRATIVE PROCEEDINGS

10.

Plaintiff filed a timely charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") on January 23, 2015, No. 410-2015-01977 addressing the discriminatory and retaliatory conduct that is the subject of this Complaint.  A copy of the EEOC charge is attached as EX "A".

11.

Plaintiff received a Notice of Right to Sue issued by the EEOC on or about February 21, 2016, No. 410-2015-01977. EX. "B".

**FACTS**

12.

Gibson was elected Mayor of the City of Lumpkin, Georgia in November, 2010.

13.

Gibson ran for re-election in 2014 but was defeated.

14.

Upon taking office in January 2011, Gibson fomented a culture of racism in hiring and promotion practices in general and with respect to Plaintiff, in particular.

15.

Gibson, throughout his administration, made his position abundantly clear in social media regarding the City of Lumpkin, GA and personally.

16.

The social media posts of Gibson and the City of Lumpkin could send a message to a less sophisticated citizen that the City itself sees value in violence by blacks against whites from an historical perspective.

17.

Upon taking office in January 2011, Mayor Gibson regularly and repeatedly discriminated against sworn Caucasian police officers.

18.

The recurring mantra heard during Gibson's administration involved his creation of divisiveness.

19.

Plaintiff was employed as a police officer, narcotics, and canine (K-9) handler by the City of Lumpkin on or about January 16, 2013.  At the time of hire, and at all times subsequent thereto, Plaintiff possessed an exemplary performance record.

20.

For his services, Plaintiff was to receive compensation at the rate of $12.75 per hour and, by contract, .5 hours per day as a fee for training and maintaining a dog used in law enforcement.

21.

Lumpkin had a Chief of Police, Javier Garcia, at the time Plaintiff was hired, who reported directly to Gibson who had hire/fire authority as to Garcia.

22.

Gibson began demonstration of discriminatory animus almost immediately by denial of privileges of employment.  For example, officers received pay for supervision and security at basketball games.  Gibson refused to make the duty available to Plaintiff, though routinely to African-American officers. When

Plaintiff asked Garcia about the denial, he was told, "The Mayor says they don't want your kind."

23.

Gibson's communications to Garcia, in Garcia's office in the presence of Plaintiff and others, very frequently centered around race and Gibson's expectations of special accommodations and concessions that should be made to black residents.

24.

Gibson's concessions were not limited to citizens.  For example, when an African American officer, Brock Mitchell, burglarized the office, to gain access to active drug case files, leaked the information on the street and was assaulted, he was allowed the resign in the aftermath without charges or even any formal investigation.

25.

There came a time when Gibson, who had first-line direct control of the police department, told Garcia he needed a "man of color" in a "power position" within the Department.

26.

Gibson's personal articulated choice was Gary Price, an African-American Officer reporting to Plaintiff, who had been fired from the Albany, GA Police

Department in 2012 for initiating three (3) different high speed automobile chases

resulting in two (2) fatalities and was far less qualified than Plaintiff. The plan was

to make him assistant police chief, a position that did not officially exist.

27.

In time, however, Plaintiff was promoted to the (unofficial) position of

assistant chief of police, a position in which he reported directly to Garcia, Chief of

Police.

28.

At that time, a second, and official, sergeant position was created and

Gibson directed Garcia to elevate Price to it.

29.

Gibson, and some members of the city council who did not like white

people, frequently micro-managed the organization and gave directions directly to

Plaintiff.

30.

On or about December 1, 2013, Plaintiff and another Caucasian officer, Jeff

Burris, approached a gathering of African-Americans in the street who were

known to them and asked their help in contacting associates who had been

burglarizing citizens and destroying property to modify their activities before

someone got hurt.

31.

As was the custom and habit of all officers when dealing directly with elements of "the street", Plaintiff addressed them in the rather crude and vulgar language of "the street."

32.

This modality is almost universally employed, received and respected as effective communication in performing this type of police work.

33.

Two persons in a different gathering, upon hearing the admonition, became agitated and confrontational. As the situation quickly escalated, Plaintiff and Officer Burris physically subdued Victor Flowers, a known violent career criminal, GDC ID: 0000443538, having received, *inter alia*, penitentiary sentences of 15 and 30 years respectively for Robbery by Force and the Sale and Distribution of Cocaine and having spent 8 years and 2 months, on 4 different occasions out of the previous 19 years in incarceration.  Also subdued was James Beauford, previously convicted of Driving Under the influence of Intoxicants and obstructing a police officer.

34.

Both men, appearing to be intoxicated, were threatening, loud, profane, and were advancing upon Officers Conley and Burris.

35.

The same was witnessed by a council member and Gibson who arrived at the jail to which the men had been taken for charging and caused their release and the Police Department was instructed to write only citations and refrain from advancing the true facts.

36.

The entire incident was captured on film and from the film it is determinable that neither officer acted outside of protocol in subduing or restraining Beauford and Flowers, who had just been released from prison 3 months earlier and who was then on parole.

37.

Then, three days later, Mayor Gibson ordered Garcia to write Plaintiff up in connection with the incident.

38.

Upon inquiry, Garcia told Plaintiff that black council members pressured Gibson to fire Plaintiff according to Gibson.

39.

The write-up was retaliatory and was purely pre-textual in character and was motivated by racial animus directed against Plaintiff by Gibson and African-American city council members.

40.

Though Gibson ordered release of Flowers in circumstances in which parole was subject to revocation, the City of Lumpkin, with no investigative data with which to defend itself, became, along with Officers Conley and Burris, the Defendants in a lawsuit for violation of their civil rights filed by Flowers and Beauford on March 15, 2015, recently settled in this Court, CA. No. 4:15-cv-00032-(CDL), with non-admission of liability in Plaintiff.

41.

A short time later, Sergeant Burris and Plaintiff were told by Garcia that Gibson said to "Keep your white asses out of town and stay on GA 1." Upon inquiry Garcia stated, "He said you two f—kers are giving him too much headache."

42.

The action was retaliatory and was purely pre-textual in character and was motivated by racial animus directed against Plaintiff by Gibson.

43.

Within a short time following this incident, a petition was circulated seeking the removal of the white police officers.

44.

The petition included the names of two City Council members when shown to Garcia.

45.

Garcia departed the Police Department in or around May, 2014.

46.

Plaintiff was made interim police chief.  By then he was earning $13.25 per hour.

47.

In August 2014, Sergeant Randy Howard, a qualified applicant then reporting to Plaintiff, was promoted to interim police chief.

48.

Plaintiff had acquitted himself admirably in the position of interim Chief and anticipated returning to the position of Assistant Chief.

49.

On August 8, Chief Howard informed Plaintiff that Gibson had ordered him to demote Plaintiff and promote Jonathan Jackson, a less qualified African-American, to the position of assistant chief.

50.

Thereupon, Plaintiff demanded a conference with Chief Howard and Mayor Gibson to obtain a cogent explanation.[2]

51.

When asked directly by Plaintiff, Gibson told Plaintiff he needed a "man of color" in the position.

52.

When Plaintiff told Gibson of the adverse impact on his career associated with demotion via P.O.S.T., Gibson told Plaintiff, "Well, I guess you can just resign, then," thereby effecting constructive discharge of Plaintiff,[3] thus retaliating against Plaintiff for engagement in legally protected conduct, *i.e.*, complaining about race discrimination and the resulting adverse career professional impact.

---

[2] Because a demotion of a police officer must be reported to Georgia P.O.S.T. officials who are obliged to perform a full investigation that becomes part of an officer's official and permanent record that gets reviewed each time the officer seeks employment or promotion.  It is burdensome for the officer going forward.

[3] Jackson was later discharged when he arrested Gibson following his personal obstruction of a valid arrest of an African-American City Clerk whom Gibson had instructed to flee and allude Jackson following an attempted traffic stop.  When apprehended the Clerk phoned Gibson, who came to the site of her arrest.

## CLAIMS FOR RELIEF

## COUNT I

**Race Discrimination in Violation of the Equal Protection Clause of the
United States Constitution, 42 U.S.C. § 1983**

53.

All preceding paragraphs are incorporated herein by reference.

54.

Plaintiff is a member of a protected class, and was denied equal promotional
opportunities and compensation opportunities by Defendants because of his race.

55.

The employment relationship between Plaintiff and Defendants gives rise to
a cause of action for race discrimination.

56.

At all relevant times, Defendant Gibson was Mayor of Defendant City of
Lumpkin and used his position to implement and carry out a custom, policy and
procedure of discrimination on the basis of race.

57.

Defendant Gibson, acting under color of law, used his authority over
Plaintiff to carry out illegal race discrimination against Plaintiff.

58.

The conduct of Defendants in discriminating against Plaintiff because of his race, violates Plaintiff's right to the equal protection of the laws as granted by the Fourteenth Amendment to the United States Constitution, as well as the Civil Rights Act of 1866, as amended 1991, 42 U.S.C. § 1981.

59.

Defendants proximately caused this violation of Plaintiff's rights and so acted under color of state law and local ordinances, regulations, customs, and usages of the City of Lumpkin in violation of 42 U.S.C. § 1983.

60.

Defendants' actions were willful, wanton, and intentionally directed to harm Plaintiff.

61.

Defendants' actions were reckless and were taken in willful disregard of the probable consequences of their actions.

62.

Defendants City of Lumpkin and Mayor Charles Gibson, in his official capacity, are governmental entities subject to the Fourteenth Amendment as applied through 42 U.S.C. § 1983, and each is a "person" as defined by relevant case law interpreting 42 U.S.C. § 1983.

63.

Defendants' race discrimination against Plaintiff violates the Equal Protection Clause of the Fourteenth Amendment, thus entitling Plaintiff to all appropriate relief provided under 42 U.S.C. § 1983.

64.

Defendants implemented policies and customs that discriminated on the basis of race, and that therefore violate Plaintiff's rights under the Fourteenth Amendment to the U.S. Constitution, enforced via 42 U.S.C. § 1983.

65.

Defendants discriminated against Plaintiff on the basis of his race by demoting him and denying him compensation opportunities provided to similarly situated African-American employees as part of a larger scheme, policy and practice of discrimination on the basis of race.

66.

Defendants took these actions as part of an unofficial government policy or custom which discriminates against white employees.

67.

Defendants did so in violation of clearly established constitutional and statutory authority that such actions are a violation of the law.

68.

Defendants took these actions with knowledge that they were in clear violation of constitutional and federal statutory law.

69.

Defendant Gibson, acting under color of law, used his authority over Plaintiff to carry out illegal gender discrimination against Plaintiff.

70.

At all relevant times, Defendant Gibson was Mayor of the City of Lumpkin, GA and used his position to implement and carry out a custom, policy and procedure of discrimination on the basis of race.

71.

The conduct of Defendants in discriminating against Plaintiff because of his race, violates Plaintiff's right to the equal protection of the laws as granted by the Fourteenth Amendment to the United States Constitution.

72.

Defendants proximately caused this violation of Plaintiff's rights and so acted under color of the state law and local ordinances, regulations, customs, and usages of the City of Lumpkin and Office of the Mayor in violation of 42 U.S.C. § 1983.

73.

As a result of Defendants' conduct, Plaintiff has suffered lost wages and benefits and has suffered mental and emotional distress.

74.

Plaintiff was damaged by Defendants' actions in an amount to be proven at trial.

## COUNT II

### Retaliation in Violation of the First Amendment to the United States Constitution

75.

All preceding paragraphs are incorporated herein by reference.

76.

Defendants' actions have deprived Plaintiff of his right to freedom of speech and association as guaranteed by the First Amendment to the Constitution of the United States.

77.

This violation of rights was proximately caused by Defendants who were acting under color of state law, and local ordinances, regulations, customs or usages of the Police Department of the City of Lumpkin in violation of 42 U.S.C. § 1983.

78.

As a direct and proximate result of Defendants' actions against Plaintiff, he has been damaged and is entitled to the relief set forth in the Prayer for Relief below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands a **TRIAL BY JURY** and that the following relief be granted:

A. That this Court take jurisdiction of this matter;

B. That process be served;

C. That Plaintiff be awarded a declaratory judgment that Defendants violated 42 U.S.C. § 1983;

D. That this Court enter a permanent injunction, prohibiting Defendants from engaging in unlawful employment practices in violation of 42 U.S.C. § 1983;

E. That upon a finding of discrimination the court order re-instatement as Assistant Chief of Police.

F. That the Court award Plaintiff back pay and front pay in an amount to be determined at the trial of this case[4];

G. That the Court award compensatory damages in an amount to be determined by the trier of fact;

---

[4] Back pay with dog pay at filing is $49,568 (86 weeks @ $530 + 86 weeks @ $46.38)

H. That the Court award Plaintiff punitive damages against Defendant Gibson in an amount to be determined by the trier of fact;

I. That the Court award Plaintiff his costs in this action and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, 42 U.S.C. § 2000e-5(k) and other applicable laws;

J. That the Court grant Plaintiff the right to have a trial by jury on all issues triable to a jury; and

K. That the Court grant such additional relief as the Court deems proper and just.

Submitted this 12th day of April, 2016.

                                        */s/ John W. Roper*
                                        John W. Roper
                                        Georgia Bar No.: 614159

The Roper Law Firm
5353 Veterans Parkway
Suite D
Columbus, Georgia  31904
(706) 596-5353
Fax: (706) 596-5383
johnroper@roperlaw.com